UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X  Case No.
AHMED SALAMA,

                      Plaintiff,

      -against-

DISKAL, INC., WILLIAM DOE, *Individually*, and
CARLOS DOE, *Individually*, (the surname DOE being
fictitious, as the true surnames are presently unknown),

                      Defendants.
---------------------------------------------------------------------X

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Plaintiff, AHMED SALAMA, by his attorneys, PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to 42 U.S.C. § 1981; the New York State Human Rights Law, New York State Executive Law § 296, *et seq.* ("NYSHRL"); and the New York City Human Rights Law, New York City Administrative Code § 8-502(a), *et seq.* ("NYCHRL"). Plaintiff seeks damages to redress the injuries Plaintiff has suffered as a result of being **discriminated against** and **terminated** by Defendants on the basis of his **national origin (Egyptian), race (Arab), and age**.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 42 U.S.C. § 1981 and 28 U.S.C. §§ 1331 and 1343.

3. This action involves a Question of Federal Law.

4. The Court has supplemental jurisdiction over Plaintiff's claims brought under state and city law pursuant to 28 U.S.C. § 1367.

1

5. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b), as the acts complained of occurred therein.

## PARTIES

6. Plaintiff is a 66-year-old, Egyptian-born, Arab-American, male who resides in Queens County, New York.

7. Defendant DISKAL, INC. ("DISKAL") is/was a domestic business corporation operating in and existing under the laws of the State of New York.

8. Upon information and belief, Defendant WILLIAM DOE's first name is "William"; Defendant WILLIAM DOE's last name is presently unknown to Plaintiff and he therefore sues Defendant WILLIAM DOE by such fictitious name.

9. Defendant WILLIAM DOE ("WILLIAM") is/was an employee of Defendant DISKAL of Bangladeshi origin holding the position of night-time assistant manager.

10. Defendant WILLIAM was Plaintiff's supervisor and had supervisory authority over Plaintiff.

11. Upon information and belief, Defendant CARLOS DOE's first name is "Carlos"; Defendant CARLOS DOE's last name is presently unknown to Plaintiff and he therefore sues Defendant CARLOS DOE by such fictitious name.

12. Defendant CARLOS DOE ("CARLOS") is/was an Hispanic employee of Defendant DISKAL.

13. Defendant CARLOS is/was Plaintiff's supervisor and had supervisory authority over Plaintiff.

14. Defendant WILLIAM and Defendant CARLOS are collectively referred to herein as "Individual Defendants."

15. Defendant DISKAL and Individual Defendants are collectively referred to herein as "Defendants."

**MATERIAL FACTS**

16. Defendant DISKAL owned and operated a diner located at 86-55 Queens Boulevard, Elmhurst, New York 11373 (the "Georgia").

17. In or around October of 2007, Plaintiff began working at the Georgia as a waiter.

18. Initially, Defendant DISKAL paid Plaintiff $1.50 per hour plus tips. Plaintiff worked approximately 60 hours per week on overnight shifts.

19. In or around 2009, Defendant WILLIAM began making regular comments about Plaintiff being an Arab. For example, whenever a group of customers who Defendant WILLIAM perceived to be Arab patronized the Georgia, he would tell Plaintiff, "Your paisanos came." Plaintiff was offended at the insinuation the he was connected to these strangers just because Defendant WILLIAM believed they were Arabs. Defendant WILLIAM made these offensive comments on average more than once per month for the remainder of Plaintiff's tenure at the Georgia.

20. In or around December of 2014, Plaintiff entered into a $19,994 settlement agreement with Defendant DISKAL for extensive wage and hour violations.

21. Around the same time, Plaintiff began working approximately 40 hours per week but still worked overnight shifts.

22. In or around 2014, Defendant DISKAL hired Defendant CARLOS as a waiter.

23. In or around 2016, Defendant DISKAL promoted Defendant CARLOS to night-time assistant manager and he began supervising Plaintiff. Defendant CARLOS started discriminating against Plaintiff shortly after he became assistant manager.

24. Defendant CARLOS frequently made offensive comments about Plaintiff's national origin, race, and age, at least two to three times per week. For example, Defendant CARLOS:

- Suggested Plaintiff was a murderer and/or terrorist because he was an Arab and/or Egyptian, often stating, "You guys put bombs on planes and kill children," and, "You guys kill people and you're good at it." Defendant CARLOS even went so far as to cast Plaintiff as a potential suicide bomber, stating, "You guys put belts on and kill yourselves."

- Associated Plaintiff with the brutal Islamic State because he was an Arab and/or Egyptian. For example, Defendant CARLOS stated, "You're one of ISIS" and "ISIS are your paisano." Defendant CARLOS also asked Plaintiff, "Are you in ISIS?"

- Mocked Arabs in general, Egyptians in particular, and Plaintiff individually for hailing from what he believed to be desert regions. For example, Defendant CARLOS asked Plaintiff, "Why do you care about soccer? All you have is a ball of sand!" and, "How many humps does your camel have?"

- Called Plaintiff a "camel jockey," a well-known racial/ethnic slur.

- Mocked Plaintiff for his age by asking Plaintiff, "How old are you now?" and, "When are you going to retire?" Defendant CARLOS also said, "You're too old for this job."

- Patted Plaintiff down while "searching for bombs," again insinuating that Plaintiff was a terrorist because he was an Arab and/or Egyptian.

- Said, "Find a new job," suggesting Plaintiff was too old for his job.

- Said Plaintiff had to "wear the Arab uniform" on Halloween.

4

- Repeatedly stating, "You're old like a mummy," simultaneously taunting Plaintiff for his Egyptian heritage and age.

25. Defendant CARLOS placed his hand on Plaintiff's shoulder dozens of times and menacingly said, "My Egyptian friend." This would fill Plaintiff with dread, as it generally portended a particularly galling spate of abuse.

26. As intended, these comments hurt Plaintiff deeply. Moreover, Plaintiff was outraged that he was lumped together with murderers, mocked, and taunted simply due to his identity.

27. Defendant WILLIAM would frequently laugh as Defendant CARLOS made these outrageous comments. Each time this happened, Plaintiff felt abandoned and betrayed by Defendant WILLIAM, someone Plaintiff had known for years and whom Plaintiff expected to protect him from such despicable abuse in the workplace.

28. Plaintiff suffered a hostile work environment which was very severe and which no reasonable person in Plaintiff's shoes could be expected to endure.

29. Although the harassment was consistent, it spiked in reaction to current events that Defendant CARLOS associated with terrorism, which he in turn associated with Arabs and thus Plaintiff. For example, in September of 2016, following a series of bombings in Chelsea and the New York City metropolitan area, and around Halloween of 2017, following a vehicular attack on pedestrians in Manhattan's Financial District, Defendant CARLOS' racist, verbal assaults increased. These spikes in abuse outraged and embarrassed Plaintiff at a time when he was particularly sensitive and feared that Americans might turn against Arabs living here.

30. Plaintiff regularly protested he was not a terrorist and "we don't kill people." He also insisted he could do his job as well as his younger coworkers. However, Plaintiff did not

make more overt complaints about discrimination because he feared for his job, especially because Defendant WILLIAM often laughed along with Defendant CARLOS' discriminatory conduct.

31. In or around January of 2018, Dimitrios Kaloidis, a principal of Defendant DISKAL, advised employees who worked at the Georgia, including Plaintiff, that the Georgia would be closing in or around March of 2018. However, Defendant DISKAL was planning to continue operating a second diner (the "Nevada" located at 80-26 Queens Boulevard, Elmhurst, NY 11373), which it also owned. Defendant DISKAL planned to expand the Nevada's operations to twenty-four hours per day and hire employees from the Georgia to staff the Nevada's new, longer hours.

32. Defendant WILLIAM told Plaintiff that he should apply for a job at the Nevada, which Plaintiff did.

33. In or around March of 2018, Defendant DISKAL closed the Georgia.

34. Plaintiff's last day of work was on or about March 24, 2018.

35. Although many of the Georgia's employees secured employment at the Nevada, Plaintiff was not offered a new position. Upon information and belief, the bulk of these new workers, and particularly of the waiters, were several years younger than Plaintiff and were neither Egyptian nor Arab. The majority of those employees that were offered continued employment were also not employed by Defendant DISKAL for as long as Plaintiff had been.

36. Plaintiff would have been a well-suited employee to continue working at the Nevada since he had already been working the late-night shift at the Georgia, and Defendants required employees to work the newly created late-night hours at the Nevada.

37. Plaintiff's employment was terminated after working at the Georgia for more than ten years.

38. Defendants' failure to hire Plaintiff at the Nevada was discriminatory. Defendant DISKAL predicated its decision not to continue Plaintiff's employment on his age, race and national origin, as was made obvious by the repeated discriminatory comments Plaintiff suffered during his employment.

39. Many other servers with far less experience than Plaintiff who previously worked at the Georgia were able to continue their employment at the Nevada.

40. Defendant DISKAL knew or should have known of the discriminatory conduct and failed to take corrective measures within its control.

41. Plaintiff was repulsed, offended, disturbed, humiliated, and disgusted by this blatantly unlawful termination and discrimination.

42. Defendants created a hostile work environment which unreasonably interfered with Plaintiff's ability to perform his job.

43. The above are just some of the ways Defendants regularly and continually harassed and discriminated against Plaintiff while employing him.

44. Defendants treated Plaintiff this way solely due to his race (Arab), nation of origin (Egyptian), and age.

45. Defendants acted intentionally and intended to harm Plaintiff.

46. Plaintiff's performance was, upon information and belief, above average and satisfactory while working for Defendants.

47. Defendants unlawfully discriminated against, humiliated, degraded, and belittled Plaintiff. As a result, Plaintiff suffers loss of rights, emotional distress, and loss of income.

48. As a result of the acts and conduct complained of herein, Plaintiff has suffered a loss of employment, income, the loss of a salary, loss of bonus, loss of benefits, other compensation which such employment entails, special damages, and great inconvenience.

49. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

50. Defendants acted maliciously, willfully, outrageously, and with full knowledge of the law.

51. As such, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

### FIRST CAUSE OF ACTION FOR DISCRIMINATION
### UNDER 42 U.S.C. § 1981
### (Not Against Individual Defendants)

52. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

53. 42 U.S.C. Section 1981 states in relevant part as follows:

    (a) Statement of equal rights
    All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
    (b) "Make and enforce contracts" defined
    For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

54. Arab is a race under the meaning of 42 U.S.C. § 1981.

55. Plaintiff is a member of the Arab race.

56. Defendant DISKAL violated the section cited herein as set forth.

### SECOND CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against all Defendants)

57. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

58. The New York City Administrative Code § 8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, . . . [or] national origin . . . of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

59. Defendants violated the section cited herein as set forth.

### THIRD CAUSE OF ACTION FOR DISCRIMINATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (Not Against Defendant DISKAL)

60. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

61. The New York City Administrative Code § 8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

62. Individual Defendants violated the section cited herein as set forth.

### FOURTH CAUSE OF ACTION FOR DISCRIMINATION
### VICARIOUS LIABILITY UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (Not Against Individual Defendants)

63. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

64. NYCHRL § 8-107(13) is entitled "Employer liability for discriminatory conduct by employee, agent or independent contractor." It provides:

> a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.
> b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: (1) the employee or agent exercised managerial or supervisory responsibility; or (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.
> c. An employer shall be liable for an unlawful discriminatory practice committed by a person employed as an independent contractor, other than an agent of such employer, to carry out work in furtherance of the employer's business enterprise only where such discriminatory conduct was committed in the course of such employment and the employer had actual knowledge of and acquiesced in such conduct.

65. Defendant DISKAL violated the section cited herein as set forth.

**FIFTH CAUSE OF ACTION FOR DISCRIMINATION
UNDER THE NEW YORK STATE EXECUTIVE LAW
(Against all Defendants)**

66. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

67. <u>New York State Executive Law</u> § 296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, race, . . . [or] national origin . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

68. Defendants violated the section cited herein as set forth.

## SIXTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK STATE EXECUTIVE LAW
### (Not Against Defendant DISKAL)

69. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

70. New York State Executive Law § 296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

71. Individual Defendants violated this statute as set forth.

## JURY DEMAND

72. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by the 42 U.S.C. § 1981, the NYSHRL, and the NYCHRL in that Defendants discriminated against and wrongfully terminated Plaintiff on the basis of his national origin (Egyptian), race (Arab) and age;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and conduct and to otherwise make Plaintiff whole for any losses suffered because of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering, and injury to Plaintiff's reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just, and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
       July 12, 2018

PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC

By: _____
Steven Fingerhut
Attorneys for Plaintiff
45 Broadway, Suite 620
New York, New York 10006
(212) 248-7431
sfingerhut@tpglaws.com
